September 14, 2020

**VIA ECF**

The Hon. Lewis J. Liman
U.S. District Court
Southern District of New York
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re: **Kozlowski v. Experian Information Solutions, Inc.; Case No. 19-cv-11640 (LJL)**
          *Joint Letter Motion for a Referral to Court-annexed or Private Mediation and to Temporarily Stay Discovery*

Dear Judge Liman:

      Plaintiff Karen Kozlowski ("Plaintiff") and Defendant Experian Information Solutions, Inc. ("Experian"; together Plaintiff and Experian are the "Parties") jointly and respectfully move the Court ("Motion") for an order ("Order") (a) referring the Parties to mediation and (b) temporarily staying all discovery for a period running from the date of the Order until forty-five days after October 13, 2020 (the current fact discovery deadline) so that the Parties may make their best effort to reach a settlement.[1]  The Parties ask the Court grant their Motion because it may help ensure the most "just, speed, and inexpensive resolution" of the action.[2]

      Momentum in settlement negotiations between the Parties was temporarily halted recently due to the change in Experian's lead counsel in this case. Ms. Cealagh Fitzpatrick, former lead counsel for Experian, recently began an extended maternity leave. Ms. Ashley Burman has now assumed responsibilities as lead counsel.  Ms. Fitzpatrick's departure came at a critical juncture of fact discovery: after the Parties had (a) exchanged documents (and, with limited exceptions, resolved discovery disputes), (b) devoted many hours to factual analysis, and (c) engaged in meaningful settlement discussions so that they could jointly assess whether it made sense for both Parties to ask the Court to refer the case to mediation.  The Parties agree and respectfully submit that the alternative to mediating before completing fact discovery – spending substantial time and resources completing fact discovery, including (among other things) preparing for and taking and defending depositions – could negatively impact their ability to resolve the case.  Litigation costs and attorney's fees are particularly important factors in settlement negotiations in Fair Credit Reporting Act ("FCRA") cases, like the present action, because the FCRA is a fee-shifting statute.

      If Your Honor grants this Motion, the Court would provide the Parties with an opportunity to continue momentum gained in settlement discussions and make their best effort to resolve the case at mediation if not through direct negotiations.  Also, by imposing a finite stay, Your Honor would allow the Parties to focus their near-term efforts exclusively on continued

---

[1] Forty-five days after October 13 is November 27, 2020.
[2] *See* F.R.C.P. § 1.

settlement negotiations and preparation for mediation and, in the event that mediation is unsuccessful, also provide reasonable time thereafter for the Parties to complete discovery. For those reasons, the Parties respectfully submit that there are compelling grounds for the Court to grant this Motion.

Moreover, although the Court previously granted the Parties' initial motion for an extension of discovery deadlines and denied without prejudice Experian's recent consent motion to further extend the discovery period, Your Honor ruled on both of those motions without being fully apprised of the reasons for delays in discovery or the current status of discovery. As such, in addition to stating why the Parties now seek a referral to mediation and a corresponding finite stay of discovery, Plaintiff and Experian include in this Motion a description of discovery to-date.

*Document Discovery Between the Parties has Taken Longer than Anticipated*

Completion of document production between the Parties took longer than is typical because of the ongoing COVID-19 public health crisis. Plaintiff served first sets of Requests for Production and Interrogatories on March 30, 2020. At the same time, Experian was required to significantly limit its business operations because of various public health orders implemented to help stop the spread of COVID-19. These measures affected Experian's secure facility in Texas, which exclusively houses all of Experian's sensitive and private consumer data. Relevant documents from Plaintiff's consumer file (among other Experian internal documents), which ultimately were produced in this matter, could only be collected and assembled at a secure facility in Texas where remote access is not possible. Even before COVID-19, obtaining consumer files could take up to three months due to the quantity of lawsuits filed against Experian across the nation. In this case, despite an expedited request, that limitation still caused even longer than usual delays in Experian's ability to gather Plaintiff's consumer files and to collect and assemble those files for purposes of investigating Plaintiff's claims and producing documents.

Moreover, this case and its underlying documents are unusually complicated because it is predicated on allegations by Plaintiff of a badly mixed credit file. A mixed file occurs when the credit files of two or more people are combined in a credit reporting agency's database. Mixed files can result in errors by Experian reporting, among other things, a consumer's name, phone number, address, and/or credit data. Even the least complicated mixed file case is more complex than a typical FCRA consumer dispute lawsuit because it requires careful factual analysis to reconstruct a narrative from underlying facts based on different sets of Experian's internal files concerning, in some cases, multiple consumers.

In this case, Plaintiff's claims required even more labor and time to review and analyze than the typical mixed file case given – to quote Plaintiff's own words – the allegedly "staggering" amount of alleged inaccuracies on Plaintiff's Experian credit report.[3] *See* Compl. ¶¶ 10, 32-36 (alleging inaccurate reporting of 39 account tradelines, 19 names, 14 addresses, 10 hard inquiries, and 36 "soft" inquires was "staggering."). To date, Experian has produced 1,321

---

[3] Experian denies these allegations, and any allegations of wrongdoing as to Experian pled by Plaintiff in her Complaint.

pages of relevant documents, including encrypted documents pulled from Experian's various databases containing sensitive and confidential information, from the credit files of two consumers. All of those documents had to be reviewed and analyzed by counsel for both Parties.

Accordingly, because of the complex nature of this particular litigation, fact discovery has required production of more voluminous and complex documents by Experian than is usual in FCRA cases. The Parties had to review and analyze all such documents, in addition to documents that Plaintiff produced, in order to assess the relative strengths and weaknesses of their respective claims and defenses prior to completing document discovery, taking and defending depositions, and engaging in well-informed settlement discussions.

### *Delays in Completing Fact Discovery Have Been Exacerbated Due to a Change in Lead Counsel for Experian*

Prior to taking maternity leave, Ms. Fitzpatrick and Plaintiff's counsel were actively pursuing settlement negotiations and working on a schedule intended to allow the Parties to complete fact discovery by the current deadline. Counsel for both Parties held a good faith belief that settlement was possible prior to Ms. Fitzpatrick's leave. Although there was no resolution before Ms. Fitzpatrick took her leave, the Parties' did engage in extensive discussions about the underlying documents and Experian produced numerous additional documents at Plaintiff's request in an effort to clarify Experian's position for settlement purposes. That effort resulted in notable momentum in settlement talks. That same momentum also led to a delay in the last stages of fact discovery due to the desire of both Parties, based on their joint optimism about the prospects for a possible settlement, to avoid the potentially unnecessary and large costs of discovery motion practice and depositions.

Ashley Burman, the undersigned counsel for Experian, has taken over as lead counsel from Ms. Fitzpatrick. Ms. Burman is now engaged in the process of familiarizing herself with and analyzing the voluminous and complicated documents at issue in the action. That process, which continues, has further delayed discovery, making it difficult for the Parties to address remaining discovery disputes and complete fact discovery by the current deadline. Ms. Burman has, however, learned enough about the case from her predecessor and her review of the file to date to share the optimism of Ms. Fitzpatrick and Plaintiff's counsel that settlement of this complicated case in the near future is possible.

### *Unexpected Delays in Third-Party Discovery*

Third-party discovery, despite Plaintiff's efforts to the contrary and the progress that Plaintiff continues to make, are another area in which there have been unexpected delays.

To prepare to depose Experian witnesses and to gather evidence for a potential summary judgment motion and other purposes, Plaintiff served thirty-seven document subpoenas on third Parties on July 21, 2020. Those subpoenas concern account data and credit inquiries that Plaintiff alleges were reported by Experian in violation of the Fair Credit Reporting Act and New York Fair Credit Reporting Act. Although subpoena responses were due in August, there remain subpoenaed Parties who have not yet made and/or completed their productions. Plaintiff

continues to work with third Parties to obtain subpoenaed documents or declarations that those entities do not have responsive documents within their possession, custody, or control.

*Current Status of Discovery between the Parties*

Concerning written discovery, the Parties have exchanged discovery demands, served responses and objections, and produced documents. Plaintiff served first sets of Requests for Production and Interrogatories on March 30, 2020. Experian served responses and objections to Plaintiff's demands on May 7, 2020. Experian made a partial document production on or around May 7, and has made a rolling document production thereafter. Experian served its Requests for Production and Interrogatories on April 28, 2020. Plaintiff served responses and objections to Experian's first sets of Requests for Production and Interrogatories on June 4, 2020. Plaintiff produced documents before serving responses and objections.

Concerning depositions, Plaintiff (a) on August 14, 2020, and again thereafter, asked Experian for 30(b)(6) deposition dates (Plaintiff also served a topic list for a 30(b)(6) deposition of Experian's corporate representative), and (b) has informed Experian that Plaintiff may also serve 30(b)(1) deposition notices. Experian also intends to make a decision soon as to whether it is necessary to notice a deposition of Plaintiff based on near-term settlement discussions between the Parties.

Based on the foregoing, the Parties respectfully submit that they have diligently proceeded with discovery in a good faith attempt to meet deadlines despite (a) unavoidable delays presented by COVID-19, (b) the unusual complexity of this mixed file case, and (c) the fact that lead counsel for Experian took maternity leave at a time when settlement negotiations had gained considerable momentum, thereby requiring the undersigned counsel for Experian to take over the case file and proceed with the laborious process of familiarizing herself with the complex underlying facts.

*Conclusion*

While the Parties could conceivably complete discovery by the current October 13 deadline, doing so would be difficult. Adding to the Parties' difficulty completing discovery by October 13 is the fact that Plaintiff's counsel cannot work on a number of days between now and that date due to religious observances. Most importantly, however, are two inseparable facts: first, completing fact discovery by October 13 would cause the Parties to incur large costs and attorney's fees that may well make settlement less likely in this fee-shifting action; second, a referral to mediation coupled with a finite stay of discovery deadlines would, if mediation is successful, prevent the Parties from incurring those same costs and attorney's fees in the first place. For these reasons and the others stated in this Motion, the Parties respectfully request an Order referring the Parties to mediation and staying all discovery from the date of the Order until a date forty-five days after October 13, 2020.

Absent unforeseen emergencies and/or extraordinary circumstances, the Parties will not seek an additional stay or extension of discovery deadlines. For all of the foregoing reasons, Plaintiff and Experian jointly move the Court for an Order (a) referring the Parties to Court-annexed or private mediation, and (b) staying all discovery from the date of the Order until

November 27, 2020, forty-five days after the current deadline for fact discovery. A proposed revised case management plan and scheduling order accompanies this letter Motion.

Thank you for your consideration.

/s/ Adam G. Singer
Adam G. Singer
**LAW OFFICE OF ADAM G. SINGER, PLLC**
Counsel for Plaintiff


/s/ Ashley D. Burman
Ashley D. Burman
JONES DAY
250 Vesey Street
New York, New York 10281
Tel: (212) 326-3823
Fax: (212) 755-7306
aburman@jonesday.com

*Attorney for Defendant*
*Experian Information Solutions, Inc.*


A stay in this action is GRANTED until November 27, 2020.

SO ORDERED.  9/18/2020.

LEWIS J. LIMAN
United States District Judge